OWEN v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, *Appellant.*

1. **Railroads**: FREIGHT ; CONSTITUTION : STATUTE. A railroad corporation, organized under the laws of this state, subsequent to the going into effect of the present constitution, and the laws passed thereunder classifying and regulating the charges of railroads for carriage of freight, is subject to the provisions of such constitution and laws. It cannot claim exemption therefrom on the ground that it has purchased the privileges and franchises of a railroad corporation whose existence antedates that of the constitution and said laws.

**2. Railroads:** CARRIAGE OF FREIGHT, CHARGES FOR.  Under the evidence in this case, held, the defendant in its transaction with plaintiff did not violate the law (R. S., §§ 833, 834, 835) regulating charges for carrying freight.

*Appeal from Dallas Circuit Court.*—Hon. R. W. Fyan, Judge.

Reversed.

*John O'Day* for appellant.

Plaintiff erroneously united in his petition separate and distinct alleged penalties or causes of action when each should have been separately stated in a distinct count.  R. S. sec. 3512 ; *Graves v. Pierce,* 53 Mo. 423 ; *Mulholland v. Rapp,* 50 Mo. 42 ; *Stewart v. Balderston,* 10 Kas. 131; *Hannibal &c. v. Bowling,* 53 Mo. 311.   The verdict is a general one and therefore erroneous ; there should have been a special finding on each count.   *Clarke v. R. R.,* 36 Mo. 216 ; *Talbot v. Jones,* 15 Mo. 215 ; *Christie v. Boyce,* 47 Mo. 70 ; *Siebert v. Allen,* 53 Mo. 441. The statute should have been pleaded.   *Haskell v. Moody,* 9 Pick, 162 ; *Nichols v. Squire,* 5 Pick. 168; *Askew v. Ebberts,* 22 Cal. 262.   The provisions secs. 834 and 835 of R. S. are penal and must be strictly construed.   Potter's Dwarris, pp. 236 247; *City of St. Louis v. Laughlin,* 49 Mo. 559 ; *Howell v. Stewart,* 54 Mo. 402 ; *City of New York v. Knoll,* 70 N. Y. 530 ; *People v. McFadden,* 19 Wend. 396.   The application for a removal of the cause to the United States circuit court was improperly over-ruled.   U. S. Statutes at Large, 470 ; *R. R. Co. v. Mississippi,* 12 Otto 135 ; *Mayor v. Cooper,* 6 Wall. 247; *Fisk v. R. R.,* 6 Blatch. 352; *Tarble's case,* 13 Wall. 406. The plaintiff cannot recover in the case because it has succeeded to the rights and privileges of the Atlantic & Pacific railroad, Southwest Pacific railroad and South Pacific railroad, which said roads had the right to fix the rates to be charged for carriage of passengers and freight.

The rates charged by both the defendant and the Missouri Pacific after deducting the amount charged as demurrage or switchage or both is a much less rate than the rates fixed by the statute for carrying grain from Lebanon to St. Louis. The rate charged by the defendant from Lebanon to Pacific was less than the statutory rate.

*Dyer, Lee & Ellis* and *J. P. Nixon* for respondent.

The St. Louis & San Francisco Railway Company is subject to the provisions and requirements of art. 3, chapter 21, R. S. of Mo., establishing railroad classification and regulating freight charges. *Ruggles v. Illinois,* 108 U. S. 531; *Spring Valley Water Works v. Schottler,* 110 U. S. 347. It is well settled that a state may by general law limit the amount of charges of railroad companies for fares and freight, unless restrained by the charter of the company. *Munn v. Illinois,* 94 U. S. 113; *Chic., Burlington & Quincy R. R. Co. v. Iowa,* 94 U. S. 155; *Peik v. Chicago & North Western R. R. Co.,* 94 U. S. 164; *Winona & St. Peter R. R. Co. v. Blake,* 94 U. S. 180; 1 Rorer on Railroads, 569; 2 Rorer on Railroads, 1351 to 1363. The legislatures of the various states have the right to pass proper laws prohibiting excessive freight charges and unjust discriminations. Such laws are constitutional and valid. *Olcott v. Supervisors,* 16 Wallace 694; *R. R. Co. v. Richmond,* 19 Wallace 584; *Commissioners v. P. & O. R. R. Co.,* 63 Maine 279; *Shipper v. Commonwealth,* 47 Pa. State 340; *Blake v. Winona & St. Peter Co.,* 19 Minn. 418; *Beckman v. S. & S. R. Co.,* 3 Paige Ch. 45; *State v. W. & St. P. R. Co.,* 19 Minn. 434; *Fuller v. Ch. & N. W. R. R. Co.,* 31 Ia. 188; *Hudson Co. v. State,* 4 Zab. (N. J.) 718; *McGregor v. Erie R. R.,* 6 Vroom (N. J.) 89; *Tilley v. Savannah R. R. Co.,* 1 Am. & Eng. R. R. C. 615. Even if the St. Louis and San Francisco Railway Company were operating under the Atlantic and Pacific charter its road from Lebanon to St. Louis, in the state of Missouri, still the road would,

under well-settled principles, be subject to the legislative control of the state of Missouri. *State Treasurer v. Auditor*, 46 Mich. 224; *Louisville, &c., R. R. v. Palmes*, 109 U. S. 244; *Campbell v. Marietta, &c., R. R. Co.* 23 Ohio St. 168. The defendant is liable for overcharges made by it on contracts for through shipments from Lebanon to St. Louis when the railroad from Franklin to St. Louis was owned and operated by the Missouri Pacific Railway Company. The statute, R. S. sec. 834, provides: "In computing the rates on freight, according to the provisions of this article, the distance shall be computed from the point where it is received in this state, *notwithstanding it may pass from one road to another.*" This statute and the latter provision in it have been upheld by the supreme court of Wisconsin in construing the Potter law, which was the model of our own statute on the same subject. *Ackerly v. R. R.*, 36 Wis. 252; *Rood v. R. R.*, 43 Wis. 155; *Attorney General v. Railroad Companies*, 35 Wis. 425. The application by defendant for removal of this cause from the circuit court of Dallas county to the United States circuit court was properly overruled. The application was not made before or at the term at which the cause could first be tried, nor was it made before the trial. 18 U. S. Stat. at Large, p. 471; *Murray v. Holden*, 1 McCrary 341; *Atlee v. Potter*, 4 Dil. 559; 16 Am. & Eng. R. R. cases 272; *Alley v. Nott*, 111 U. S. 472. It was unnecessary for plaintiff to formally plead the statute, the penalty sued for not existing at common law and being the creature of the statute. *White v. Maxey*, 64 Mo. 558; *Kennayde v. Pacific Railroad*, 45 Mo. 257.

HENRY, J.—This suit is for the recovery of penalties for overcharges, alleged to have been made and received by defendant of plaintiff, on contracts for through shipments of freight from Lebanon, a station on defendant's road, to St. Louis, the eastern terminus of the Missouri Pacific Railroad, and from Lebanon to Pacific, a

station of the Missouri Pacific Railroad. The defend-
ant's road ran from its southern terminus, through
Lebanon to Pacific.

By section 833, Revised Statutes, freight is classified,
and, by section 834, freight charges are regulated. The
freight shipped by plaintiff belonged to class "D" which
comprises all grain in car loads. Section 835 imposes
a penalty for making overcharges. Plaintiff had a judg-
ment from which defendant has appealed, and contends
that the foregoing provisions of the law do not apply to
it, because it acquired by purchase the right of the At-
lantic and Pacific Railroad Company, a corporation
organized under an act of the congress of the United
States, and, also, by the same purchase, the right of the
S. W. Branch of the Pac. R. R. Co., a corporation or-
ganized under the laws of Missouri, to fix and determine
tolls, freights and fares, free from all state control or in-
fluence. Appellant's counsel has filed a voluminous
abstract of 364 pages of printed matter, containing the
acts of congress, and of the state legislature in relation
to these different corporations, and, in a brief of 243
pages, discussed numerous questions, bearing upon that
of defendant's amenability to the above sections of the
Revised Statutes; but there is only one point on this
branch of the case, which we deem it necessary to no-
tice, believing it decisive of the main question.

The defendant was incorporated in the year 1876, un-
der the general laws of this state. The constitution of
1875, art. XII, contains the following provisions, in force
when defendant was incorporated :

Sec. 12 : "It shall not be lawful in this state for any
railway company to charge for freight or passengers a
greater amount, for the transportation of the same, for a
less distance than the amount charged for any greater
distance ; and suitable laws shall be passed by the gen-
eral assembly to enforce this provision ; but excursion
and commutation tickets may be issued at special rates."
Sec. 14. "Railways heretofore constructed, or that may

be hereafter constructed in this state, are hereby declared public highways and railroad companies common carriers. The general assembly shall pass laws to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state; *and shall, from time to time, pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on said railroads, and enforce all such laws by adequate penalties.*"

Sections 833, 834 and 835, classifying and regulating charges for freight and imposing a penalty for overcharges, were in force at and prior to the date of defendant's incorporation. Defendant is not the "Atlantic and Pacific Railway Company," or the "South West Branch of the Pacific," under another name, but is a new corporation, organized since the adoption of the constitution of 1875, and the enactment by the general assembly of the above sections. The defendant, not the "Atlantic and Pacific" or the "South West Branch of the Pacific," is now, and at the time of the alleged receipt of overcharges for freight, was owner of, and operating the road from Lebanon to Pacific. Even conceding for the argument, that the Atlantic & Pacific by the act of congress, and the South West Branch of the Pacific, by the act of our legislature, were placed beyond the control and interference of the state, and had rights and franchises which could not be destroyed or abridged by the legislature, yet it does not follow that a corporation deriving its being, under the laws of this state can purchase rights from any corporation or individual, which it is forbidden to exercise.

Corporations can hold only what they are authorized to acquire and hold by their charters. Before the defendant had a corporate existence the people of the state adopted the constitution of 1875, and the general assembly passed the laws required by the constitution, and yet it is claimed for a corporation, deriving its vitality and being from the general laws of the state, since the adop-

tion of that constitution and the enactment of those laws, that it is independent of both. It strikes me that the refutation of the proposition is found in its statement. The constitution declares, also, art. 12, sec. 21, that: "No railroad corporation in existence at the time of the adoption of this constitution, shall have the benefit of any future legislation, except on condition of complete acceptance of all the provisions of this constitution." The convention evidently assumed that there were corporations possessed of rights and privileges which it could not abridge, but intending to reserve complete legislative control of such as might thereafter be created, it attempted by this provision to get state control of all others.

In view of these solemn declarations in our organic law, would it not be strange if a corporation could be created by the General Assembly, or under the general law, which would not be subject to those provisions of the constitution? Sections 12 and 14, *supra*, of the constitution are prospective and are applicable to all railroad corporations formed after the adoption of that constitution. The manifest policy was, to get legislative control of all railroad corporations, and yet it is strenuously urged, that so far from succeeding as to corporations then in existence, it has even failed as to those subsequently organized, which can acquire, by purchase, the rights of effete corporations whose existence antedates the constitution, and thus perpetuate the exemption from legislative control, which the constitution sought to extinguish. We are of a different opinion, and hold that defendant is subject to the provisions of the constitution, and the law under consideration. And there are highly respectable authorities which support this view. *Louisville & N. R. R. Co. v. Palmes*, 109 U. S. 244; *Campbell v. R. R. Co.*, 23 Ohio St. 168.

Did defendant violate the law in question in its transactions with the plaintiff? The sum of the freight charged from Lebanon to St. Louis, considering it a

through rate, exceeded that allowed by the statute, if the amount paid for carrying the wheat from the depot of the Missouri Pacific Road to the Yeager Mills and the St. Louis Elevator and demurrage charges are not to be deducted. But the question first to be disposed of, is as to defendant's undertaking to carry plaintiff's shipments of wheat beyond Pacific. If it did not, its charge of seventeen and eighteen cents per hundred pounds from Lebanon to Pacific, was not excessive. It must be conceded that it was under no legal obligation, and without permission from the Missouri Pacific Railway Company to use its road, was not prepared to carry the plaintiff's wheat to St. Louis. The whole question, therefore, must turn upon the agreement between plaintiff and defendant, considering in that connection the agreement between defendant and the Missouri Pacific Company.

The evidence on this point established the following facts, we think, beyond any doubt : The defendant's station agent at Lebanon was, also, the agent of the Missouri Pacific at that point. When plaintiff made his first shipment of wheat, he was told by defendant's agent, that he was not authorized to give bills of lading for defendant company, to carry beyond its terminus, Pacific. Plaintiff at first objected, but finally shipped the wheat, taking defendant's bill of lading to Pacific, and one from the Missouri Pacific from Pacific to St. Louis. At the same time he was furnished with blank bills of lading of both companies, which he afterwards used in his shipments, each of which was made as in the first instance. To those facts, not only the agent at Lebanon, but the plaintiff and his clerk testified. Every way bill issued by the defendant on freight shipped by plaintiff showed the division rates which each road received, and the freight charged by defendant, including demurrage and switchage at St. Louis. Pacific was defendant's eastern terminus, nor did it ever have any control or management of the Missouri Pacific road or business from Pacific to

St. Louis. The charge on freight made by the Missouri Pacific was ten cents per hundred, from Pacific to St. Louis. That rate was fixed by that company and defendant had no control over it whatever. The defendant endeavored to get the Missouri Pacific Company to reduce its rate, but the latter refused and threatened, if defendant's patrons refused to pay it, that the Missouri Pacific would not receive freight from the defendant's road without breaking bulk.

An agreement was entered into between the two companies, by which the Missouri Pacific agreed to haul defendant's cars over its road, both passenger and freight, but under that agreement the Missouri Pacific had exclusive control of the trains and cars and the arrangement was made as testified by several witnesses, in the interest and for the benefit of shippers, to avoid breaking bulk at Pacific and the expense and waste incident to the re-handling of the freight. The plaintiff could have shipped over the defendant's road to Pacific at local rates, and there made his terms with the Missouri Pacific, or shipped in the mode adopted by him. The switch companies in St. Louis were separate and distinct from the Missouri Pacific Railway Company, and to get a car loaded with wheat from the Missouri Pacific depot to the Central Elevator or the Yeager Mills costs from $3 to $6 per car. All of plaintiff's wheat went to the Yeager Mills and the Central Elevator, and the cost of transportation from the Missouri Pacific depot to those points was paid by defendant. On the foregoing facts, we see nothing upon which to base the claim made by plaintiff.

The agreement between the Missouri Pacific and the defendant made, as the witnesses testify, for the benefit of shippers, does not affect the question of defendant's liability; did not make defendant a carrier of freight from Lebanon to St. Louis, in spite of the express contract, made by defendant with plaintiff, that it would only carry to Pacific. It is contended that under that contract, the Missouri Pacific only received eleven per

cent. of the freight charged and received by defendant of plaintiff. This is a misconception of its import. By that agreement, the Missouri Pacific Company was to receive eleven per cent. of the entire amount of all gross earnings of defendant, on all of its passengers, freights and other business, which passed from Pacific to St. Louis over the Missouri Pacific road. The road of defendant was, after January, 1880, seven hundred miles long, and the distance from Pacific was but one-twentieth of that distance, and of all freight and passengers coming from the southern terminus of defendant's road, or any other point on said road, to Pacific, and thence carried over the Missouri Pacific to St. Louis, the Missouri Pacific received eleven per cent. We have, therefore, no data by which to determine whether the Missouri Pacific Company, on the shipments made by plaintiff, received more or less than its local rate from Pacific to St. Louis, even if the freight charged from Pacific to St. Louis is to be regarded as earnings of the St. Louis & San Francisco road, and as embraced in the contract between the two roads. But plaintiff's own testimony shows that it was not so regarded, and that the Missouri Pacific Company got the full amount of its local rate on all of plaintiff's shipments. Such was the testimony of Cassiday, defendant's general freight agent, introduced by plaintiff. To the same effect is the testimony of Vitch, Nichols and others, defendant's witnesses. Nor is it material, whether it did or not. The defendant did not agree to, nor did it in fact, carry the grain to St. Louis, and if plaintiff paid no more than the local rate allowed from Lebanon to Pacific and from Pacific to St. Louis, he has no ground of complaint.

If such an arrangement as that made between these two roads is to be held to make each one a carrier over the route of the other, from the point where its cars are received by such other, railroad companies will of course to the detriment of shippers, throughout the state, cease to enter into such agreements. Without such an

agreement, each road can charge its local rates to its terminus, and the result will be to increase the cost of transportation, from the necessity of breaking bulk and rehandling the freight. The defendant lost, rather than gained, by its agreement with the Missouri Pacific Company, as was testified to by several witnesses, and such agreements as that between these two companies are to be encouraged, because manifestly in the interest of the shipper, and the mode adopted by them for a division of freights concerns no one else.

The statute upon which this suit is based is a penal statute, and while not to be so strictly construed as to defeat its object, yet when one is charged with its violation, the evidence must show that, either in its letter, or, at least, in its spirit, its provisions have been violated. Even if defendant is to be held as having received the entire freight on plaintiff's shipment to St. Louis, yet it was under no obligation to carry the wheat beyond the Missouri Pacific depot at St. Louis, and, in accordance with a long established custom, it paid for plaintiff the charges for transporting the wheat from that depot to the Yeager Mills and to the St. Louis Elevator, from $3 to $5 per car, and adding to this a reasonable charge for demurrage, in support of which there is abundant testimony, and also, that, at that season cars were worth from $5 to $10 per day, and deducting these sums from the freight received, it would reduce the sum to considerably less than the charge allowed by the statute for the entire distance. Treating defendant as having only received from plaintiff freight charges from Lebanon to Pacific, eighteen cents per hundred pounds, the above charges would reduce the freight really received considerably below what defendant had a right to charge under the statute. The distance from Lebanon to Pacific is 148 miles, six cents for the first twenty-five, four for the next, and two cents for each additional twenty-five miles, would make the local rate it could have charged eighteen cents.

There was no evidence upon which to base the instructions given for plaintiff with regard to overcharges from Lebanon to Pacific. None were asked or given in relation to alleged overcharges from Lebanon to St. Louis, and upon what evidence the verdict for $9,360 was based, we are at a loss to conjecture. The judgment is reversed. All concur. Judge Sherwood in the result, Hough, C. J., absent.