LOCKWOOD *et al.* v. THE WABASH RAILROAD COMPANY, *Appellant.*

Division Two, May 24, 1894.

1. **Municipal Corporation**: RAILROAD: LAYING TRACK ON STREETS, POWER TO AUTHORIZE. A permit from the mayor to construct and operate a railroad through the streets of St. Louis is void, as the charter vests exclusive authority to grant such privilege in the mayor and assembly to be exercised by ordinance.

2. ———: ———: ———: NUISANCE. A city can not authorize the construction and operation of a railroad through a street so narrow that such use will necessarily destroy it as a public way and deprive abutting owners of access to their property.

3. ———: ———: ———: ———. A city can not create a nuisance in its streets or devote them or any part thereof to a purpose inconsistent with the rights of the public or abutting property owners.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*F. W. Lehmann* and *G. S. Grover* for appellant.

(1) The charter of the North Missouri railroad company, and also the ordinance of the city of St.

Louis, authorized the construction of the main track and siding in Collins street. *Black v. Railroad*, 58 Pa. St. 249; *Railroad v. Municipality*, 1 La. Ann. 128. (2) The charter and ordinance in question were valid acts of legislative authority, and the use of streets authorized by them is a public use, consistent with the purposes for which streets are dedicated or established. *Railroad v. City*, 10 N. J. Eq. 352; 6 Whart. 15; *Railroad v. City*, 66 Mo. 228; *Ass'n v. Telephone Co.*, 88 Mo. 258; *Refining Co. v. Elevator Co.*, 82 Mo. 121; *Railroad v. Railroad*, 111 Mo. 666; *Commonwealth v. Railroad*, 27 Pa. St. 357. (3) The obstruction to the use of the streets by the general public, forbidden by the law to the railroad company, is that resulting from structures which present permanent physical obstacles to free passage along the street, and is not the interference or impediment to free general use resulting from railway travel and transportation over the street. *Lackland v. Railroad*, 31 Mo. 180; *Porter v. Railroad*, 33 Mo. 128; *Lackland v. Railroad*, 34 Mo. 259; *Randle v. Railroad*, 65 Mo. 325; *Cross v. Railroad*, 77 Mo. 318; *Smith v. Railroad*, 98 Mo. 20; *Gauss v. Railroad*, 20 S. W. Rep. 658. (4) Whether a particular street may properly be used for railway purposes, is an administrative rather than a judicial question. *Railroad v. City*, 92 Mo. 160. (5) Under the pleadings in this case the plaintiffs were not entitled to relief, because of the manner in which the defendant used or operated its tracks. *Gauss v. Railroad, supra.* (6) If the mode of the use made of the street by defendant was wrongful, that would not authorize an injunction preventing any and all use of the street by it. (7) The construction of the railroad in question having been authorized by the state and municipal authorities, an injunction against such construction will not be issued at the suit of private individuals, and particularly so where they

have no special interest in the matter. *Ins. Co. v. Heiss*, 141 Ill. 35; *Rude v. City*, 93 Mo. 408.

*Leverett Bell* for respondents.

(1) The mayor's permit is void. No authority is vested in that officer to grant the right to occupy a street in the city with railroad tracks to be operated by locomotives and cars. 2 R. S., p. 2099; *Owen v. Railroad*, 83 Mo. 454; *St. Louis v. Railroad*, 114 Mo. 25. (2) Ordinance 15,816 by its terms purports to authorize a single track on Collins street, between Carr street and Franklin avenue (called Cherry street in the ordinance); and the appellant has constructed two tracks and two switches on the street and is making use of the street as a car yard and passenger station in violation of law. (3) The laying of the track on Collins street withdraws it from public use and this the city can not authorize. *Com. v. Frankfort*, 17 S. W. Rep. 287; *Railroad v. Applegate*, 8 Dana, 294; *Crosby v. Railroad*, 10 Bush. 288; *Ruttles v. Covington*, 10 S. W. Rep. 644.

GANTT, P. J.—This is a proceeding for injunction by plaintiffs who are abutting property owners on Collins street, in the city of St. Louis, between Franklin avenue and Carr street, to prevent the defendant, a steam railway company, from constructing, maintaining and operating its railway along Collins street between Carr street and Franklin avenue, with a prayer for general relief.

The petition alleges: That the plaintiffs are the owners of certain described property on Collins street, between Carr street and Franklin avenue. That this property is valuable, is worth more than $30,000, and that its access to Collins street is an important element

in its value, and that it is covered with permanent buildings. That the defendant, by ordinance of the city of St. Louis number 15,816, approved September 3, 1890, was granted permission to construct, maintain and operate a branch of its road with a single track along Collins street, in front of the plaintiff's property, and elsewhere, as specified in the ordinance. The ordinance itself is set out *in haec verbæ*. That Collins street, between Carr street and Franklin avenue, and in front of the plaintiffs' property is a narrow street, having a width from building line to building line of forty feet, and a sidewalk on each side of the street eight feet in width, leaving a roadway of twenty-four feet.

That the defendant has constructed and laid down on the east half of the roadway of Collins street, in front of plaintiffs' property, a single railway track, under the alleged authority of the ordinance aforesaid, but has not, up to the time of the filing of the petition commenced operating locomotives, cars and trains thereon, and that it now threatens and purposes so to do, unless restrained by the process of the court. That the defendant is engaged in laying and constructing a second railway track on the west half of the roadway of Collins street, in front of plaintiffs' property, by virtue of a permit given by the mayor of the city of St. Louis, under date May 21, 1891. This permit is set out *in haec verbæ*. That this permit has no legal force or effect, and is void.

That this construction, maintenance and operation of said railway tracks, or either of them, along Collins street, in front of plaintiffs' property, will hinder and prevent the public from using the street; will exclude travel, passage and business therefrom; will exclude all vehicles, and will destroy the use of the street as a public thoroughfare. And plaintiffs charge that the character of Collins street, between Carr street and

Franklin avenue, is such that the railway tracks thereon, or either of them, can not be operated without preventing the public from using the street, and that under the law the city of St. Louis, can not, nor can its mayor or municipal assembly authorize such use of a street as will destroy its use as a public thoroughfare, and that ordinance 15,816, so far as it attempts to authorize the construction, maintenance and operation of a steam railway track in Collins street, is absolutely null and void.

Plaintiffs state that by reason of the construction, maintenance and operation of said railway tracks, or either of them, at the points named, their property will be greatly depreciated and damaged in its selling and rental value, and the damages which will accrue to to them will differ in degree and kind from those which will accrue to other members of the community, or to the public at large, from the same causes. They pray, therefore, that the defendant may be forever enjoined from constructing, maintaining and operating the said railway tracks, or either of them, along Collins street, between Carr street and Franklin avenue, and for such other relief as they may be entitled to.

To this petition the defendant filed an answer, in which it admits that it has a corporate existence as a railroad company under the laws of the state of Missouri, and that it is engaged in maintaining and operating a steam railway, as alleged in the petition. Every other matter contained and set forth in the petition is denied.

By way of further answer defendant states that the North Missouri railroad company was a railway corporation duly organized by special act of the general assembly of the state of Missouri, entitled: "An act to incorporate the North Missouri railroad company," and approved March 3, 1851, and "An act to amend an

act entitled an act to incorporate the North Missouri railroad company,'' which amendatory act was approved January 7, 1853. That under and by virtue of section 11 of said act of March 3, 1851, the North Missouri railroad company was duly empowered to build its railroad along and upon any street, or any road or wharf of any town or city, and over a stream or highway in the state of Missouri, and that under and by virtue of section 9 of the act of January 7, 1853, said company was authorized to locate, construct and operate a railroad from the city of St. Charles to the northern boundary line of the state of Missouri, and from the city of St. Charles to any point in the city of St. Louis, and also to construct and operate lateral or branch railroads to any point. The answer alleges that the Wabash railroad company is the successor to the North Missouri railroad company, and is entitled to all its rights, privileges and franchises, and the various links in chain of title from the North Missouri railroad company to the Wabash railroad company are set forth in answer; but as no question is made in the case with respect to these, they need not be repeated here.

The answer also pleads and sets out ordinance of the city of St. Louis, number 15,816, and the permit of the mayor, dated the twenty-first day of May, 1891. It is further set out, that in pursuance of the authority conferred by the special act of the legislature of the state of Missouri hereinbefore referred to, and by virtue of the general laws of the state, and the ordinance of the city of St. Louis, the defendant did construct and now operates a branch of its railroad in the state of Missouri, along and upon Collins street, in the city of St. Louis.

The plaintiff filed a reply, denying all the allegations of the answer, and affirmatively setting up that the special acts of the legislature pleaded in the answer constitute no defense to the plaintiff's cause of action,

because the defendant had so constructed its railroad along Collins street, from Carr street to Franklin avenue, that the public are prevented from using the street, and that it was forbidden to do this by the special acts of the legislature referred to.

Further, the reply sets up that the defendant is not entitled to construct railroad tracks on the streets of St. Louis without the consent of the city of St. Louis, given by ordinance, and that with such consent it can not construct such tracks on any such streets if they will prevent the public from using them, and the ordinance and the mayor's permit referred to are invalid, because the railway of Collins street, between Carr street and Franklin avenue, to which wagons and vehicles are restricted and confined to their passage along the street, has a width of only twenty-four feet, and the effect of the railroad tracks thereon is to prevent the public from using the street and to destroy the same as a thoroughfare. Judgment is prayed for as in the petition.

This action was commenced in the circuit court of the city of St. Louis on June 1, 1891. No preliminary injunction was asked or obtained. The cause was heard in December, 1891, and on March 3, 1892, a decree was rendered perpetually enjoining the defendant from operating with cars and locomotives the said railway tracks on Collins street in the city of St. Louis, between Carr street and Franklin avenue. From that decree this appeal is taken.

The uncontroverted facts are that the plaintiffs' own property in St. Louis on the east side of Collins street, between Franklin avenue and Carr street, extending eastwardly to Second street, of the value of about $30,000, covered by permanent structures and rented for business purposes. Collins street, between Franklin avenue and Carr street, has a width of forty feet

between the building lines, with sidewalks eight feet wide on each side, with a roadway only twenty-four feet in width. The Wabash railway company is a railroad corporation organized under the general railroad law of this state in 1889, and is the grantee of the North Missouri railroad company, which was chartered by special act of the general assembly, March 3, 1851.

Between the institution of this action and the trial in the circuit court, the defendant laid its railroad tracks in Collins street and employed the street to receive and discharge passengers from its passenger trains. It claimed the right to do this under the charter of the North Missouri railroad, its predecessor, and under an ordinance of the municipal assembly of St. Louis, number 15,816, approved September 3,,1890, and under the permit of the mayor of St. Louis of date May 21, 1891. In front of the plaintiffs' property the defendant laid a double track for its railway, along Collins street. The distance between the east rail and the curbstone in front of respondents' property is three feet and six inches, as to one lot of ground, and three feet, eight inches as to the other. The tracks are seven feet apart, and on the west side of the street the western rail is three feet and four inches from the curb line. From Carr street southwardly one hundred and twenty-five feet, the track is a single track in the center of the street to a switch and thence southwardly with a double track four hundred and eighty-four feet to a switch, and thence two hundred and sixty-five feet southwardly with a single track to Franklin avenue, the southern terminus of the road. There are seven trains a day operated over this line, namely: At 7 o'clock, 8, 8:45, and 10:45 in the forenoon; and at 4, 5:45, and 6 o'clock in the afternoon. Each train occupies the street for twenty or thirty minutes, and is switched as it comes in, making use of the two tracks for the purpose.

There is a night train at 11 o'clock on two evenings of the week, on which occasions the train stands in the street from 8 to 11 o'clock.

The testimony is uncontradicted and convincing to the effect that traffic is excluded from the street during the occupation of the same by the cars, and that the business of the railroad company and of the public can not be carried on there at the same time. When the railroad company makes use of the street, the public traffic by all others is excluded, and this covers a period of three and one-half hours every day between 7 A. M. and 6 P. M. The two can not exist and be carried on at the same time. Where the single track exists, the space between it and the sidewalk is nine feet and a fraction, and freight wagons can not pass a train on this single track, with safety. It also appears that respondents' property is damaged in its rental and salable value by the presence of the cars on the street. The tracks are laid to the grade of the street, and constitute no material obstruction save when occupied by trains.

There is nothing in the ordinance limiting the company's right to run trains at any and all times of day or night. The ordinance number 15,816, authorizes the company to construct, maintain and operate a branch of its railroad with single track and necessary sidings and turn-outs over the following route:

"Along Second street, crossing North Market, Monroe, Exchange, Madison, Chambers, Tyler, La-Beaume, Bogy, Mound, Howard and Mullanphy streets, across city block 264, across Florida street, thence down Collins street, across Cass avenue, Bates, O'Fallon, Ashley, Biddle, Carr and Cherry streets, through the alley in block 68, across Morgan, through the alley in block 67, across Christy avenue, and across

block 66, and all intervening alleys, to a proper connection with the tracks of the St. Louis Bridge and Tunnel Railway Company.

"The construction of the aforesaid tracks shall be subject to the approval of the street commissioner, and said tracks shall be laid to conform to the grade of the streets and alleys so crossed and occupied."

The mayor's permit was as follows:

{ "MAYOR'S OFFICE,
{ "ST. LOUIS, MO., May 21, 1891.

*"To Whom it May Concern:*

"Permission and authority are hereby given the Wabash Railroad company to construct, maintain and operate a siding and turn-out in Collins street, between Carr street and Franklin avenue, as per accompanying plat. Said company to construct, lay and maintain said switch and turn-out in conformity with all grades, in such manner and subject in all things to the satisfaction and approval of the street commissioner. Notification of commencement of work to be sent to street department. This permit subject to revocation at any time, whereupon said siding and turn-out shall be removed, and the street restored by said railroad company.

"EDW. A. NOONAN, Mayor."

I. The mayor's permit alone conferred no authority on defendant to occupy the street with railroad tracks and operate trains drawn by locomotives over it. The sole power to grant such a franchise is vested in "the mayor and assembly," by section 26, paragraph 11, article 3, of the scheme and charter, and can be exercised only by an ordinance duly enacted for that purpose, and the revised statutes of the state, chapter 42, article 2, under which defendant was organized did not "authorize the construction of any

railroad *not already located in*, upon or across any street in a city or road of any county, without the assent of the corporate authorities of said city." R. S. 1889, sec. 2543, part 4.

The purchase by the defendant of the property and franchises of the North Missouri railroad did not exempt it from this provision of its own charter. *Owen v. Railroad* 83 Mo. 454. The most that it acquired by the purchase of the North Missouri in this connection was the right to continue the use of such tracks as were laid by its predecessor during the time it had a right to exercise its franchise. This new branch or spur was constructed by itself and its right to do so must be found in the law under which it was created. *St. Louis v. Railroad*, 114 Mo. 13.

Section 2543, provides that when a railroad builds its track in a public street by permission of the city authorities, it must restore the street to its former state or to such a state as not necessarily to have impaired its usefulness. By its charter the mayor and the assembly of the city of St. Louis have power within the city, "by ordinance not inconsistent with the constitution or any law of this state" or of its charter, to regulate the use of the streets of the city, and "to grant to persons or corporations the right to construct railways in the city, subject to the right to amend, alter or repeal any such grant, in whole or in part, and to regulate and control the same, as to their fares, hours and frequency of trips, and the repair of their tracks, and the kind of their rails and vehicles." Scheme and Charter, art. 2, sec. 26, par. 11.

It will be observed that the railroad is limited to the permission given it by ordinance, and the mayor and assembly of the city are restricted in their grant by the constitution and laws of this state. Subject to this

limitation, it is the settled law of this state, that a city may permit and authorize by ordinance, the laying of a railroad track along its streets. Beginning with *Lackland v. Railroad*, 31 Mo. 183, this court has uniformly held, that laying a track on the established grade of a street, under legislative authority, and operating a steam railway thereon, was not subjecting the street to a public use different from that contemplated in the original grant.

This proposition was most ably and strenuously attacked in *Gaus & Sons Mfg. Co. v. Railroad*, 113 Mo. 308, but we felt constrained by the unbroken line of decisions to adhere to it. *Porter v. Railroad*, 33 Mo. 128; *Cross v. Railroad*, 77 Mo. 321; *Smith v. Railroad*, 98 Mo. 24; *Railroad v. Railroad*, 97 Mo. 469; *Rude v. St. Louis*, 93 Mo. 408.

This proposition *unqualified* leads to this conclusion: A city may authorize a steam railroad to occupy a street with its tracks and operate its trains over it. The abutting proprietors can not recover damages for the injury resulting to their property, although it is subject to smoke, noise and cinders, at all hours of day and night, and all ingress or egress for the legitimate purposes of business, is cut off, except at such times as the railroad may elect not to run trains upon it. Debarred from redress in that direction, they apply to a court of equity to restrain what they conceive is a public and private nuisance and ask for protection of their own right to use the street, as abutting owners, and are met with the assertion that what the law itself licenses can not be a nuisance, and that they must submit to whatever inconvenience ensues because they might have anticipated that the street would be subjected to this servitude when they purchased their property. If these propositions are true, then it results that an abutting property owner on a street may have

Vol. 122—7

his property damaged or destroyed without redress, notwithstanding the constitutional guarantee "that private property shall not be taken or damaged for public use without just compensation."

But, while it has been said that a city might authorize a railroad company to lay its tracks in its streets, it has also been determined by this court and many others, that the city could not, in the exercise of this power, create a nuisance in the streets, or devote them or any part of them to a purpose inconsistent with the rights of the public or abutting property owners. Thus in *Dubach v. Railroad*, 89 Mo. 483, Judge HENRY speaking for the whole court said: "If the character of a street should be such that defendant's track could not be laid upon the street without hindering the public from using it, then, no matter how important to the company that its track should be laid in that street, *it could not be done.* Nor is it competent for a city to authorize such use of a street dedicated as a street as will destroy it as a thoroughfare for the public use."

In this case, it is too plain to be evaded that the grant conferred by this ordinance practically creates a monopoly in defendant in the use of this street. No restriction is placed upon the number of trains or the time within which they may be operated. The roadway is only twenty-four feet. In this narrow space defendant has been permitted under this ordinance, to lay two tracks, each four feet, eight inches wide. The distance between the east rail and the curbstone in front of plaintiff's property, is three feet and six inches as to one lot, and three feet, eight inches as to the other. The tracks are seven feet apart, and on the west side of the street the western rail is three feet and four inches from the curb line. These double tracks extended a distance of four hundred and eighty-four feet, with switches at either end. The company has stopped at

Lockwood v. The Wabash R'y Co.

Franklin avenue and receives and discharges its passengers in the street at this point.  At the time of the trial it was operating four trains in the forenoon, to wit: at 7 o'clock, 8 o'clock, 8:45 and 10:45 o'clock respectively.

That the defendant regards its right in that street as paramount to the plaintiffs' and the public, is very evident, from the testimony of Mr. Blake, the president of the Sligo Iron Store Company, which occupies numbers 945 and 953 Second street, extending back to Collins street.  He testifies that the operation of the road had caused a serious damage to his company; that on one occasion, they had a load of angle iron which was so long that they were compelled to use an extra set of wheels to keep it from dragging; the team had driven up to their doors on Collins street and they were unloading it; a train of defendant came in and the train men directed the iron company to move its wagon, and were told they could not do it and the railroad company's agents procured a policeman, who compelled them to move the wagon.  They could not turn around, the street was too narrow, and were compelled to pull the load around the block.

In many cases it has been said that the railroad company occupied the street along with the public, but it is perfectly plain that in this case, no wagon of ordinary width can pass on this street with safety when the trains of defendant are on it, even where it had only a single track.  On one occasion it seems that the steps of the cars were torn off in attempting to pass a wagon.  The business on Collins street is wholesale from Carr to Franklin avenue; the wagons used are seven feet, three and one-half inches from "point of hub to point of hub."

Now, while it is true that the public must submit to all reasonable inconveniences in the highways, yet

the highways are created for the public and abutting owners, and they have an unquestionable right to require a reasonable use by all who are entitled to use them. As was said by this court in *Schopp v. St. Louis,* 117 Mo. 131, "The 'public highways belong, from side to side and end to end, to the public,' and 'the public are entitled, not only to a free passage along the highway but to a free passage along any portion of it not in the actual use of some other traveller' and the abutting property owner has the right to the free and unobstructed passage to and from his property."

Said Lord ELLENBOROUGH in *Rex v. Cross,* 3 Camp. 224: "And is there any doubt that if coaches on the occasion of a rout, wait an unreasonable length of time in a public street, and obstruct the transit of his majesty's subjects who wish to pass through it in carriages or on foot, the persons who cause and permit such coaches so to wait are guilty of a nuisance?" Every time the defendant uses this street with its trains it absolutely deprives all teamsters of ordinary freight wagons access to this street, and as the ordinance gives defendant the privilege of using it with its trains as often as it pleases, such use is utterly incompatible with the purposes for which this street was created, and is unreasonable. The municipal assembly had no right to appropriate this street to defendant's use in this way.

The learned counsel made the distinction that the mere unlawful use by it of its franchise would not justify this action. We agree with him that we do not think the assembly anticipated that the company would, under this ordinance, use the streets as a depot ground for the reception and discharge of passengers, and we are clear that the ordinance is no justification for such a use. *Lackland v. Railroad,* 31 Mo. 183. And this use, of itself, was good ground for an injunc-

tion by an abutting owner. But we are satisfied that the maintenance of this steam railroad, in this narrow highway, devoted as it has been to wholesale business requiring heavy, broad trucks and wagons, must necessarily result in denying the public and the abutting owners the right to use this street as they are entitled to under the laws of this state, and that the ordinance virtually destroys it for street purposes, and therefore the assembly had no power to enact it. It was an attempt to convert it to a use different from that for which the city acquired it, and is in contravention of its charter, which declares that "no railroad shall be so constructed as to prevent the public from using any road, street or highway along or across which it may pass," and the general law of the state that prohibits a railroad from impairing the usefulness of any street.

The learned counsel urges with great force and plausibility that this railroad is a public use of the street, but it seems to us he ignores the fact that while the railroad is a public carrier, it has no right to the *exclusive* use of a public street, and such for all practicable purposes is the effect of this ordinance and its use of this street. No case in this state is authority for such exclusive use of a highway, and if it was we should not follow it. The company is a common carrier, and entitled as such to collect tolls, but not the exclusive right to monopolize a public street and shut out the public and other carriers.

Holding as we do that this ordinance in view of the facts developed, amounts to a practical condemnation of this portion of Collins street to the private and almost exclusive use of defendant, we think the injunction was properly granted by the circuit court, and plaintiffs had such an interest as would enable them to maintain the action. *Schopp v. St. Louis*, 117 Mo. 131. The judgment is affirmed. All of this division concur.