RANSOM, *Appellant*, v. THE CITIZENS' RAILWAY COMPANY *et al.*

DIVISION ONE.

1.   **Street Railway**: ABUTTING OWNERS: COMPENSATION.  A street railway properly constructed and lawfully authorized does not impose such a new burden as to entitle an adjacent owner of property to compensation therefor.

2.   —— : CONSTRUCTION OF FRANCHISES.  Grants of rights in streets are not to be extended by construction beyond the reasonable meaning of the language in which they are expressed.

3.   —— : —— : DOUBLE TRACK.  A municipal ordinance construed to authorize the substitution by the street railway company of a double track for a single track.

4.   —— : —— : ——.  If a street railway company has the authority to build a line of single or double track, the construction of a single track does not exhaust the power or preclude a later change to a double track when the business demands it.

*Appeal from Buchanan Circuit Court.*

AFFIRMED.

THIS is a suit to enjoin defendants from laying a track for a street railway, along a certain street in the city of St. Joseph. Upon demurrer the circuit court held that the petition did not state a cause of action for equitable relief. Plaintiff appealed.

The sections of the ordinance, construed in the opinion of the court, are as follows: "Sec. 1. That the right of way of the city of St. Joseph is hereby granted to the Citizens' Railway Company for the construction and operation of street railways in the city of St. Joseph, with the power and privileges to said company to construct double tracks, with turn-outs at switches at convenient points in the city of St. Joseph."

"Sec. 3. The said company shall commence the construction of the line of railway from a point on Third street, near the Pacific House, thence by the most desirable route to the Hannibal & St. Joseph railroad depot, within twelve months from the passage of this ordinance, and the same shall be completed within two years from the date of said commencement, or the privileges herein granted shall be forfeited.

"Sec. 4. The said railway company shall construct its track of iron rails, as near as may be to the center of the streets on which said track may be laid, and the track shall be laid on a grade even with the grade of the streets through which it may pass, so that the free flow of water in lateral and cross-gutters is not thereby obstructed; and the space between the rails and for two feet outside the rails shall be kept in good repair by said company, so as not to obstruct the passing, crossing or traveling on said streets by other vehicles.

"Sec. 5. The tracks of said company and appurtenances shall be maintained in good order and repair, and operated at all reasonable times for the use of the public; and each passenger may be required to pay a fare, not exceeding ten cents, for transportation from any one point on the line to any other point."

The other necessary facts are stated in the opinion.

*Vinton Pike* for appellant.

(1) The company's obligation to conform to the requirements of the ordinance was strict. Elliott on Roads and Streets, 572, 584. (2) It must be assumed that what was done was intended and understood by the public and company to the compliance with the ordinance. *Lehigh, etc., v. Harlan*, 3 Casey (Pa.) 430. (3) The company can take nothing by implication. It must show an express grant, or that what is claimed is necessarily an incident of such grant. *Packer v. Railroad*, 7 Harris (Pa.) 217, *et seq.; Com. v. Railroad*, 3 Casey (Pa.) 339. (4) Intendment against the grantor, which is not to be resorted to in private grants till all other rules fail (*Biddle v. Vandeventer*, 26 Mo. 500-3), cannot be made when the public is the grantor. If the claim is doubtful it is denied, and all doubts must be resolved against the claim. *Com. v. Railroad*, 3 Casey, 339. (5) The plaintiff constructed his building upon his lot on Sixth street while but one track was in the street, and when it was supposed the company had the privilege for but one track. The putting down of double tracks deprives him of ingress or egress to and from his premises, and practically destroys the street as a thoroughfare, so far as plaintiff's right to the use of said street is concerned. *Dubach v. Railroad*, 89 Mo. 483. (6) The city never had the power to permit the street to be devoted to uses that would subvert the purposes for which it was originally dedicated, or appropriated. The abutting owner cannot be deprived of his right to use the street in going to and from his property, and such deprivation is a trespass to private property which cannot be justified under the franchise in question, even if it permitted double tracks to be laid. (7) The petition shows that the use to which defendants were putting the street was an exclusive appropriation of it for street-car purposes. Is it not subversive of the appropriate use of a street for one to

put the street to such use permanently as will exclude for long intervals all others from any use of it whatever? It is appropriating the street to private use. *Glaessner v. Brewing Co.*, 100 Mo. 508. (8) In any event the defendants in the use they are making of the franchise construed, as they claim, are specially damaging the plaintiff, and he has his action. *Lackland v. Railroad*, 31 Mo. 180.

*Amick & Brown* for respondents.

(1) The ordinance is the grant of a power with a privilege, the power to construct a line of railway with the privilege of making it a double or single track. (2) "Switches at turn-outs" are used in the operation of both double and single tracks, and could not have been constructed unless authorized by the ordinance. Elliott on Roads and Streets, 572 ; *City v. Railroad*, 18 Atl. Rep. ( N. H. ) 87. This plaintiff cannot raise the question that the right to build the double track was forfeited by a failure to build the double track within the two years mentioned in section 3 of the ordinance. The city alone can complain of this. *Hovelman v. Railroad*, 79 Mo. 641 ; *Knight v. Railroad*, 70 Mo. 231 ; *Railroad v. City*, 66 Mo. 251. The laying of the double tracks is authorized by law and is a legal structure and not a nuisance. Plaintiff avers that it is a nuisance. That is plaintiff's conclusion. The facts, plaintiff pleads, show that this conclusion is not a correct or legal inference. (3) If the laying of the double tracks was a public nuisance, could the plaintiff be heard in a court of equity to complain? A court of equity, as a general rule, will not, at the suit of a private individual, enjoin the laying of a railway in a street. If such act amounts to a nuisance it should be restrained by the public. *Hovelman v. Railroad*, 79 Mo. 641 ; *Hobart v. Railroad*, 27 Wis. 194. (4) Plaintiff's petition shows that the driveway

on Sixth street from curb to curb is thirty-six feet; that defendants, by constructing a double track in the street, would occupy thirteen feet in the center of the street, leaving eleven and one-half feet between the curb on each side and the track. Plaintiff does not show that he is deprived of the use of the street to any greater extent than the general public. He has suffered no special injury, hence this action will not lie. *Stetson v. Railroad*, 75 Ill. 74 ; *Patterson v. Railroad*, 75 Ill. 588 ; *Railroad v. Schertz*, 84 Ill. 135 ; *Dubach v. Railroad*, 89 Mo. 483.

BARCLAY, J.—The facts of this controversy are undisputed. The only issue is one of law.

Plaintiff is a property-owner, whose land abuts on the street where the railway track, objected to, is about to be placed. The right to lay the track depends on the proper construction of a municipal ordinance of the city of St. Joseph, the material parts of which are recited in the statement accompanying this opinion.

The ordinance was passed in 1865. The company proceeded at once to construct its line accordingly. It ran from a point on Third street, near the Pacific House, along Francis, Sixth, Messanie and Eighth streets, to the Hannibal & St. Joseph railroad depot. It consisted of a line of single track (.with switches or turn-outs, at convenient intervals, for cars to pass each other), and was operated as a street railway by defendant for many years, and until shortly before the beginning of this suit, when the company began to indicate its purpose to substitute a double track for the single track. It is this that plaintiff resists. He claims that there is no authority to lay or operate a double track. This presents the only question in the case.

Such a street railway as this, so laid and operated as not to materially impair access to, or the enjoyment of, the adjacent property may lawfully be placed in the

public highways of a city, if expressly sanctioned by the proper authority. Such a use does not impose any additional burden entitling the owner of adjoining land to compensation, nor can it be justly regarded, at the present day, as any substantial impairment of the public easement or of the private rights of proprietors of land abutting on the street.

But grants of such rights and privileges in the public streets must not be extended by construction beyond the fair and reasonable meaning of the language in which they are expressed. In the present case the first section of the ordinance confers the right and privilege to construct double tracks, but it is claimed that this refers only to such tracks as are used for turn-outs or switches.

Viewing the ordinance as a whole, we consider its fair and reasonable reading to be that a single track with turn-outs was authorized; but the privilege of laying a double track, if or when needed, was likewise intended to be given. A single track was, no doubt, in immediate contemplation when the ordinance was passed, for, with a double track in use, there would have been no need for turn-outs or switches. The language of section 1 of the ordinance is not as satisfactory or clear, on the point in dispute, as might be desired, but, after the best consideration we have been able to give it, we think its true import will appear by treating the words, "with the power and privileges to said company, to construct double tracks," as if in parenthesis. That would clearly indicate the sense in which the ordinance was intended to be taken, and its reasonable interpetation, and give full effect (according to an established rule of construction) to all its language, discarding none of it as meaningless.

The question then arises whether by constructing and maintaining for many years a single-track railway line, the power conferred by the ordinance was exhausted.

If we are right in what has been already said, there can be little doubt on this point.

If the authority given embraced the establishment of a line of single track ( with turn-outs ), as well as the privilege of transforming the single into a double track, it would necessarily follow that the completion and operation of a railway with a single track would be such a compliance with section 2 as was required to vest all the privileges granted. When once the track was laid and the road in operation within the appointed period of time, all the franchises or privileges conferred by the ordinance attached, to be exercised when the exigencies of the business appeared to demand such exercise. The right to construct a double track was appurtenant to the franchise or right to operate a single-track road. As both were sanctioned by the municipal authority, it follows that the establishment of the line in either form would not impair· the right of the company to afterwards change to the other form if occasion required, there being no limitation in that regard in the ordinance itself.

The circuit court dismissed the plaintiff's petition and, in our view, correctly. With the assent of all the judges of this division the judgment is affirmed.