RUCKERT, Appellant, v. GRAND AVENUE RAILWAY COMPANY.

**Division Two, June 11, 1901.**

1. **Appellate Jurisdiction:** INJUNCTION: STREET RAILWAY. The Supreme Court has jurisdiction of the appeal from a judgment refusing to enjoin a street railway company from constructing, maintaining and operating a surface street railway on the street in front of plaintiff's property, where it was contended in the trial court that the ordinance granting the company the right to build and maintain the road had the effect to damage his property without compen-

Ruckert v. Grand Ave. Ry. Co.

sation and without an opportunity to be heard, and without due process of law, since in such contentions constitutional questions are involved.

2. **Changing Statute:** REVISED BILL: JUDICIAL NOTICE. When a change in a statute is challenged, the Supreme Court is not confined to the public statutes, but may examine the original rolls in the office of the Secretary of State, and if such examination shows that a statute was properly revised by the passage of a revised bill at a revision session, by changing the phraseology of the bill as first enacted, it will be held that the amended or revised bill became the law.

3. ———: STREET RAILWAYS: DAMAGES. The Act of 1887, requiring street railways "to provide for the payment of damages caused by the construction thereof"......"before beginning the construction of a railroad," was properly amended by the Legislature by means of a revised bill which changed these last words to read: "before taking or damaging any property in the construction of a railroad."

4. ———: SURFACE ROADS: STATUTE: EJUSDEM GENERIS. Where the statute requires a city council, "before granting any franchise for constructing and operating any elevated, underground or other street railways, on, over or under any street or alley," to establish the route, etc., it will be held that the act includes surface street railways; that although surface railroads may not come under the same class with "elevated or underground railways," yet the words "other street railways," by the law of *ejusdem generis*, can not be confined to that class, since that would be in clear contradiction of the statute, which also uses the words, "on, over or under any street or alley." Besides, surface street railways are *ejusdem generis* with elevated and underground street railways.

5. **Statute:** JUDICIAL INTERPRETATION: USE OF WORDS. Where the Legislature uses words in a statute which have long received judicial interpretation, they are presumed to have used them in the same sense.

6. ———: STREET RAILWAY: DAMAGES: ASCERTAINMENT: INJUNCTION. Unless the abutting owner shows that he has suffered some damage by the laying of a street railway on the street, different from that sustained by all other abutting proprietors on said street, his injunction asking that the company be restrained from constructing and operating the railway, under the statute of 1887, as amended

in 1889, requiring the company, which has received a franchise to build the road, to provide for paying the damage "before taking or damaging any property in the construction of the railroad," should be denied. Said act did not create in the abutting property-owner any new right to damages, and the word "damage," as used therein, must be considered to have been used with the meaning which the courts have long attached to it, under the Constitution, in condemnation cases, etc.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Rudolph Laughlin* for appellant

(1) This appeal is prosecuted directly to this court as involving the construction of the Constitution. Constitution, art. 6, sec. 12; Amend. 1884, sec. 5. (2) The trial court exceeded its jurisdiction, and usurped the province of the statutory commission. R. S. 1889, sec. 1825; Lindell's Adm'r v. Railroad, 36 Mo. 545; Koch v. Water Co., 65 Pa. St. 288; Brown v. Beatty, 34 Miss. 227; Taylor v. Railroad, 80 Mich. 81; Milhau v. Sharp, 27 N. Y. 621; Henniker v. Railroad, 29 N. H. 146; Railroad v. Turner, 41 Ark. 494; McIntire v. Railroad, 67 N. C. 278. (3) The action of the trial court in exceeding its jurisdiction and usurping the province of the statutory commission was not due process of law. Black on Constitutional Law, sec. 153, p. 424; Pennoyer v. Neff, 95 U. S. 733; In re Kelly, 46 Fed. Rep. 654; Lent v. Tillson, 140 U. S. 330; In re Frederich, 51 Fed. Rep. 747; Scott v. McNeal, 154 U. S. 46; Burton v. Platter, 53 Fed. Rep. 901; 1 Black on Judgments, sec. 242, p. 294; Seamster v. Blackstock, 83 Va. 234; Wade v. Hancock, 76 Va. 625; Ex parte Lange, 18 Wall. 176; Ex parte O'Brien,

127 Mo. 490; 7 Robinson's Practice, p. 107. (4) The fact that the revision of the Act of 1887, in the Revised Statutes of 1889, omits the title and the enacting and emergency clauses and slightly changes the phraseology of the act, does not "change, modify, or alter the law." Dart v. Bagley, 110 Mo. 51; Creason v. Railroad, 17 Mo. App. 116; Bowen v. Railroad, 118 Mo. 546; R. S. 1889, sec. 6608. (5) The act of 1887 is a general law, concerning the relation of incorporated towns and cities to the State, sanctioned by the Constitution to give practical effect to its own commands, enacted in the lawful exercise of the police power of the State, and applicable to every incorporated town and city in the State, including the city of St. Louis. Kansas City v. Scarritt, 127 Mo. 642; St. Louis v. Dorr, 145 Mo. 481; State ex inf. v. Railroad, 151 Mo. 182; Constitution, art. 9, secs. 20, 23, 25; Ewing v. Hoblitzelle, 85 Mo. 64; Constitution, art. 9, sec. 7; Constitution, art. 2, sec. 21; Kenefick v. St. Louis, 127 Mo. 1; State ex rel. v. Higgins, 125 Mo. 364; St. Louis v. Murnane, 123 Mo. 479; State ex rel. v. Bell, 119 Mo. 70; State ex rel. v. Railroad, 117 Mo. 1; State v. Bennett, 102 Mo. 356; State ex rel. v. Miller, 110 Mo. 439; Glassner v. Brewing Assn., 100 Mo. 508; Ferrenbach v. Turner, 86 Mo. 419; State ex rel. v. Tolle, 71 Mo. 645; Thomas v. Ashworth, 73 Cal. 73. (6) The act of 1887 applies to a surface street railroad, such as that constructed by the respondent. Act of 1887, secs, 1, 2; Booth on Street Railway Law, sec. 1; R. S. 1889, sec. 6570; Nichols v. Railroad, 87 Mich. 371; Clement v. Cincinnati, 16 W. L. B. 355. (7) The Act of 1887 is not to be construed and governed by the decisions which construe and govern section 21 of article 2 of the Constitution, because: (a) The Constitution delegates to the General Assembly, not alone the authority specifically recited, but above and beyond that the

inherent legislative sovereignty of the State, unshackled and supreme, save only so far as controlled by the limitations of the Constitutions of the State and of the Nation. Lloyd v. Railroad, 49 Mo. 199; Black on Constitutional Law (Ed. 1895), p. 8; Clark v. Mitchell, 64 Mo. 576. (b) It follows that the act is sovereign law, and not the mere machinery which puts section 21 of article 2, of the Constitution, into force. That section is self-inforcing. State v. Lubke, 15 Mo. App. 152; Householder v. City of Kansas, 83 Mo. 488; Railroad v. Railroad, 97 Mo. 467; Railroad v. Story, 96 Mo. 611. (c) Damages, within the meaning of the Constitution, are physical only, and do not include a depreciation in the value of property. Rude v. St. Louis, 93 Mo. 416; Fairchild v. St. Louis, 97 Mo. 85; Canman v. St. Louis, 97 Mo. 92; Van de Vere v. Kansas City, 107 Mo. 83; Glasgow v. St. Louis, 107 Mo. 198; Davis v. Railroad, 119 Mo. 180. Damages, under the statute, are expressly defined to be the depreciation in the value of property. R. S. 1889, sec. 1826. (d) The question of damages, under the Constitution, is a question of law to be passed on by the court. Householder v. Kansas City, 83 Mo. 496. The question of damages, under the statute, both as to their existence and extent, is a question of fact to be passed on by the commission of freeholders in the manner provided by the act. R. S. 1889, sec. 1825. (8) The Act of 1887 is to be construed and applied with reference to the prior state of the law, and to the evils which prompted and induced its enactment, and which it was designed to remedy. State ex rel. v. Hostetter, 137 Mo. 649; Greely v. Railroad, 123 Mo. 163; Dowdy v. Wamble, 110 Mo. 283; City of Albany v. Gilbert, 144 Mo. 231. (9) The Act of 1887 confers a new and additional right on the abutter; a right entirely separate and apart from any question of damages; a right for whose invasion there is no adequate remedy

at law; a right which equity will recognize and protect. Bispham's Principles of Equity (5 Ed.), pp. 553, 582; Evans v. Railroad, 64 Mo. 453; Roberts v. Easton, 19 Ohio St. 78; Beeson v. Chicago, 75 Fed. Rep. 880; Griswold v. Brega, 160 Ill. 490; McMichael v. Railroad, 31 Atl. 477; Milhau v. Sharp, 27 N. Y. 622; McIntyre v. Storey, 80 Ill. 127; Railroad v. Quincey, 136 Ill. 489; Wright v. Shanahan, 61 Hun, 264; Manchester Cotton Mills v. Manchester, 25 Gratt. 827; Wilkins v. St. Paul, 33 Minn. 181; Railroad's Appeal, 104 Pa. 399. (10) Whenever a right involves the performance of a condition precedent, an injunction is the proper remedy to enforce that right. Bispham's Principles of Equity (5 Ed.), 582; State v. Lubke, 15 Mo. App. 161; Evans v. Railroad, 64 Mo. 453; Beeson v. Chicago, 75 Fed. Rep. 880; Roberts v. Easton, 19 Ohio St. 78; Taylor v. Railroad, 80 Mich. 82.

*Boyle, Priest & Lehmann, Lon O. Hocker* and *Geo. W. Easley* for respondent.

(1) The record discloses that respondent's road was constructed for the transportation of passengers in cars moved by electric power over tracks laid even with the surface of the street, and plaintiff neither alleged nor proved that his ingress to or egress from his property, or any other right appertaining to his property, was injured. In such a case the injunction was properly denied and the bill dismissed. Placke v. Railroad, 140 Mo. 634; Ransom v. Railroad, 104 Mo. 375; Mfg. Co. v. Railroad, 113 Mo. 308; Stevenson v. Railroad, 68 Mo. App. 449; Lewis on Eminent Domain, sec. 124; Elliott on Streets, 558; Halsey v. Rapid Transit Co., 20 Atl. Rep. 859; Lumberger v. Rapid Transit Co., 30 S. W. Rep. 533; Louisville Bagging Co. v. Central Passenger Co., 95 Ky. 50, 44

Am. St. Rep. 203; Howe v. Railroad, 167 Man. 46, 44 N. E. Rep. 386; Koch v. Railroad, 75 Md. 222, 23 Atl. Rep. 463; Williams v. Railroad, 41 Fed. Rep. 556. (2) The appellant neither alleged nor proved any such special or peculiar damages to his property as to require compensation to be made before the road was constructed, either under the Constitution, article 2, section 21, or Revised Statutes 1889, section 1825. Van de Vere v. Kansas City, 107 Mo. 83; Rude v. St. Louis, 83 Mo. 408; Stevenson v. Railroad, 68 Mo. App. 648; Fairchild v. St. Louis, 97 Mo. 85; Canman v. St. Louis, 97 Mo. 92; Bisp. Equity (5 Ed.), sec. 439; Lewis on Em. Domain, sec. 636. (3) Neither the Constitution, article 2, section 21, nor Revised Statutes 1889, section 1825, created a new right. They only reserved to the party whose property is damaged but not taken by an authorized public work the same remedy he would have had at common law if the work had not been authorized, provided he suffered a peculiar or special damage. McCarthy's Case, L. R. 7, H. L. 243; Walker's Case, L. R. 7, A. C. 259; Rickett v. Railroad, L. R. 2, H. L. 175; Railroad v. Ogilvey, 2 Nacq. 229; s. c., 1 Patterson (Scotch App. Rep. H. L. 474); Rigney v. Chicago, 102 Ill. 64; Shawneetown v. Mason, 82 Ill. 343; Hyde Park v. Dunham, 85 Ill. 576. (4) The statute (R. S. 1889, sec. 1825) can have no application to surface street railways. Such railway does not come in the same class with elevated or underground railways, and the expression "elevated or underground railways" being followed by the words "other street railways," the latter words must be confined to railroads of the same kind previously specified. Sutherland on Statutory Const., sec. 268; State v. Schuchmann, 133 Mo. 111. (5) The position maintained by counsel for appellant, that the statute created an exclusive mode of ascertaining the damages, is not tenable. 10 Am. and

Eng. Ency. Law, title "Electric Railways," p. 907; Lewis on Eminent Domain, secs. 607, 636; Lindell's Admr. v. Railroad, 36 Mo. 545; Soulard v. St. Louis, 36 Mo. 546; Hickman v. Kansas City, 120 Mo. 117; McReynolds v. Railroad, 110 Mo. 484. (6) Appellant is estopped from asserting equitable remedy by injunction, and must be remitted to his action by law. City of Logansport v. Uhl, 99 Ind. 531.

GANTT, J.—On the fourth day of October, 1894, the plaintiff filed in the circuit court of the city of St. Louis, his petition in the nature of a bill in equity, to enjoin the defendant, a street railway company, from constructing, maintaining and operating a line of surface street railway on Grand avenue, in said city of St. Louis.

The petition alleges the incorporation of the respondent under the laws of Missouri; that there was duly passed and enacted by the municipal assembly of the city of St. Louis a certain ordinance, numbered 17047, which was duly approved by the mayor of said city on the seventeenth day of February, 1893, and the route prescribed in the ordinance passed in front of a lot of ground in city block 2100, in the city of St. Louis, fronting thirty-two feet six inches on the west line of Grand avenue, the north line of which was thirty-five feet south of the south line of Juniata street, which was alleged to be the property of the appellant.

The petition alleges that the Grand Avenue Railway Company accepted said ordinance and filed the bond required by the ordinance, and that it had begun the construction of said railway upon and along the route prescribed by said ordinance and the laying down and construction of a double-track passenger railway on the route designated in said ordinance. The petition alleges that the respondent had no right

to construct, maintain or operate said road, for the following reasons, to-wit:

"First.    Said ordinance was invalid, because it does not locate or establish the depot, stations, turnouts or switches of said railroad.

"Second.    Because the respondent did not first cause to be ascertained the damages that will be done by constructing and operating the said railroad to the real and personal property situated along said route thereof, and especially to the property of the plaintiff, and without paying to the plaintiff, or the owners of property along said route, or into court for them, the amount of said damages."

It is further alleged:    "And plaintiff states that the construction, maintenance and operation of said railway will cause great and irreparable damages to and depreciation in the value of property along the said route, and particularly in the value of the property owned by plaintiff, . . . . and will deprive plaintiff of the rights which he has hitherto enjoyed and now enjoys as owner of real estate upon Grand avenue, along and adjoining the line of said route."    The petition prays that respondent, its officers, agents and employees, be enjoined and restrained from constructing, maintaining or operating its said proposed railroad and railway tracks along the route prescribed by said ordinance, and for general relief.

The answer of the defendant denies the allegation of the petition, that it has no right or power under said ordinance to construct and operate said road; puts in issue appellant's ownership of the property claimed in the petition, and alleges that long before the filing of the petition it had begun the construction of its line of railway, and that at the time of the filing of this petition the entire line of railway, from Easton avenue on the north to Arsenal street on the south, had been constructed and nearly completed, including that portion of

Grand avenue along which the property claimed by plaintiff fronts, and that proceedings had been instituted and commissioners appointed for the determination of the compensation to be paid by respondent to the several other railway companies over whose tracks respondent was required to operate, and that respondent had, before the filing of this petition, and before a notice of plaintiff's claim, expended, in the construction of its railroad, $119,000, and had contracted to expend and incurred obligations to make further expenditures in the construction and equipment of said road.

The answer further alleges that the operation of said railroad will in nowise interfere with the ordinary use of the highway, and that Grand avenue, in front of the property claimed by plaintiff, is eighty feet wide, and that the tracks of the defendant are only four feet ten inches wide, and are constructed in accordance with the general ordinances of the city of St. Louis and was and is a surface railway for the transportation of passengers, so as to permit the use of said tracks by vehicles, and in front of the property claimed by plaintiff. That there is an unobstructed roadway on each side of the tracks of seventeen feet eight inches in width, more than sufficient for vehicles to pass each other between the curb and the outer rail of the tracks.

The answer alleges that the respondent has no depots, stations, turnouts or switches within the meaning of the statute relied upon by the appellant. And further alleges that said statute has no application to the ordinance under which defendant has constructed and proposed to operate said street railway, and no application to such a surface street railway as that authorized to be constructed, and actually constructed by respondent. It alleges that respondent was in nowise required to ascertain or determine the damages to be done real and personal property along its route, especially the property of plain-

tiff, for that the statute referred to has no application to a surface railroad of this character; and further, that no damages whatever, in depreciation of the value of the property or otherwise, has been or can be caused to plaintiff, or any other property-owner, but that, on the contrary, all such property, including property claimed by plaintiff, was largely enhanced in value by the construction and operation of said railroad.

Respondent further alleges that appellant is not entitled to the remedy sued for herein, and that he has a full and adequate remedy at law for any damages which he may now or hereafter claim or sustain. That defendant has not taken, touched, nor damaged any private property belonging to plaintiff, and that the petition is without equity and that no irreparable injury is threatened.

The answer further alleges that the appellant, if entitled to any relief, has lost it by his own laches and delay, and is now precluded and estopped from asserting any such claim by equitable relief, and should be remitted to his remedy at law, in that he has permitted defendant to proceed with the construction and completion of said railway and expend a large sum of money thereon before asserting or setting up any claim.

The appellant filed a reply in denial of all the new matter alleged in the answer.

The evidence disclosed the fact that the first work of construction was begun on the seventeenth of July, 1894, and that the actual work of laying tracks was commenced on the sixth of September, at Laclede avenue, building south from Laclede avenue with a double track; they began going south on Arsenal street on the nineteenth of September, and got to Gravois road on the twenty-fifth of September, and were in front of plaintiff's property on the twentieth of September, in the actual work of laying the tracks.

The allegations of the answer in regard to the width of

Grand avenue, and the tracks laid thereon, and the space between the curb line in front of appellant's lot, were sustained by evidence.

The appellant testified that he bought the lot in September, 1894, and brought this suit some time afterwards. He offered no other proof of his title than this. He testified that he bought it for the purpose of putting a residence thereon, but "the construction of the road spoiled it for that."

The allegations of the answer as to the expenditures made were fully sustained by the proofs.

The appellant offered no proof tending to show that the construction and operation of appellant's road in any manner, or in any degree, deprived him of ingress and egress to or from his property, or in any manner disturbed the free circulation of air and light about his premises.

The respondent offered the evidence of E. C. Rowse, and of C. H. McMillan, each of whom had had large experience in the real estate business in the city of St. Louis, and testified that the construction of the road increased the value of plaintiff's property. It is fair to say, however, that such increase was the result of the general development of that part of the city in consequence of the building of the roads, and was not a direct and immediate benefit to plaintiff's property other than the general benefit accruing to all.

The appellant introduced R. Graham Frost, who testified that a street railway passing in front of residences on the street is detrimental to them. His reasons were: "The cars make a great deal of noise, especially at night; wake people up. The cars are very heavy and getting heavier every year. They make a great deal of noise, as I say, and disturb one's rest, and they are a source of danger to children also. Where rest is necessary to a sick person they are very much disturbed by these cars. They will be wakened up every half-hour dur-

ing the night, and very often that proves fatal."

Charles H. Peck thought the street railway would be injurious to residence property that fronts immediately upon the street on which the road is located, but could not say as to appellant's vacant lot.

Philip F. Stifel, the partner of appellant, believed that this Grand avenue railroad has depreciated the value of Mr. Ruckert's lot on Grand avenue.

None of the appellant's witnesses other than Mr. Frost gave their reasons for the opinion expressed by them as to the depreciation of the property.

On the hearing the court below denied the injunction prayed and dismissed the bill. The plaintiff filed a motion for a new trial, and prosecuted this appeal direct to this court, and in support thereof has filed a brief and argument.

I.   Inasmuch as the plaintiff contended in the circuit court that the ordinance granting the defendant company the right to build and maintain a street railway on and along Grand avenue in said city had the effect of damaging his property rights without compensation and without an opportunity to be heard, and without due process of law, a constitutional question is involved which confers jurisdiction on this court. [Constitution, art. 2, sec. 21.]

II.   A most important question is now presented for the first time, as to the construction that shall be given the act of March 26, 1887 (Laws 1887, p. 39; sections 1824, 1825, 1826 and 1827, R. S. 1889; sec. 6116, R. S. 1899), entitled "An Act to restrict the legislative authority of incorporated towns and cities in regard to granting franchises for using the streets and alleys of incorporated towns and cities of this State for elevated, underground, and other street railway purposes, and to provide for the payment of damages caused by the construction and operation thereof.

"Be it enacted by the General Assembly of the State of Missouri, as follows:

"Section 1.   The legislative authority of no incorporated town or city of this State shall have the power to grant to any person or corporation, the right to construct and operate on, over or under any street or alley of any incorporated town or city, any elevated, underground or other street railroad without compliance with the conditions hereinafter named.

"Sec. 2.   *Before granting any franchise* for constructing and operating any elevated, underground, or other street railroad, *on, over or under any street* or alley of any incorporated town or city, the authorities of such town or city shall, by ordinance duly enacted, establish the route and clearly define the terms and conditions of such franchise, and locate all depots, stations, turnouts, and switches of such railroad. The party to which said franchise may be granted, shall be an incorporated company, organized under the laws of this State, to construct, maintain and operate a street railroad in the town or city by which such franchise is granted. *Before beginning the construction of a railroad under such franchise the said corporation shall cause to be ascertained and determined the damages that will be done, by the building and operation of such railroad, to the real and personal property situated on the route fixed* by the ordinance defining said franchise, and shall pay to the owner or owners of the real and personal property so affected, or into court for them, the amount of their respective damages.   In case the said corporation fails to agree with the owners thereof for the proper compensation for the damages done or likely to be done or sustained by reason of the construction and operation of said railroad, or if, by reason of the legal incapacity of any such owner, no compensation can be agreed upon, the circuit court having juris-

Vol 163 mo—18

diction over the town or city granting such franchise, or any judge thereof in vacation, on application of said corporation, shall appoint three disinterested freeholders of such town or city; who shall give personal notice to all owners or their agents of property affected, if they can be found, as well as ten days' notice by advertisement in the newspapers doing the printing of such town or city, of their time and place of meeting, and the said commissioners, having been first duly sworn to perform their duties justly and impartially and a true report to make, shall fully examine into the construction and operation of said railroad and its effects upon the real and personal property damaged thereby, making just allowances for the advantages which may have resulted, or which may result to the owner or owners of property for which damages may be claimed or allowed, and after such comparison, shall estimate and determine how much damages, if any, such property may have sustained or seems likely to sustain by reason thereof. .... All damages found by said commissioners shall, within thirty days after the filing of their report, be paid to the owners of the property damaged, or into court for them, by the said corporation, and if the same is not so paid as aforesaid, said railroad shall not be constructed.

"Sec. 3.    Damages in this act is hereby defined to be the depreciation in the value of the property that may result from the construction and operation of the proposed railroad.

"Sec. 4.    This act shall apply to all applications for franchises from towns or cities to construct and operate any elevated, underground or other street railroad, made under or in pursuance of any existing law, whether such application is hereafter made, or may have heretofore been made, but not at the passage of this act, finally acted upon by the municipal authorities.

"Sec. 5.    The pendency of a large number of applica-

tions for franchises for elevated, underground and other street railroads in the towns and cities of this State, that imperil large property rights, creates an emergency; therefore, this act shall take effect and be in force from and after its passage.

"Approved March 26, 1887."

Preliminary to the discussion of the various propositions propounded by counsel, it is essential that we should note the change in the phraseology of the said act of the General Assembly in the revisions of 1889 and 1899.

It will be observed that in the original act, in the third sentence of section 2 are the words *"before beginning* the construction of a railroad," and in both of the revisions of 1889 and 1899, those words are omitted and in their stead these words are substituted: *"before taking. or damaging any property in the construction of a railroad."* In view of the contention of counsel for plaintiff, it now becomes important to know when and by whom was this change made. An examination of the original bills in the office of the Secretary of State discloses that the Act of March 26, 1887, was properly revised by a revised bill of the Legislature in 1889, by omitting the title, the enacting clause, and the emergency clause, and by changing the phraseology of the bill as above noted.

In Bowen v. Ry. Co., 118 Mo. 541, it was held that when the existence of a statute is in question this court is not confined to the published statutes, but may examine the original rolls in the office of the Secretary of State. Nor is it necessary to plead or make proof of a public statute because courts are required to take judicial notice of it.

It must be held that the Act of 1887 was amended and changed by the General Assembly in 1889, and that the substituted words are now a part of the law, and the rights of the parties to this suit must be determined by the revised act as it

appears in the revision of 1889, so far as it affects the matters in controversy.

III.   But it is urged by defendant that this act can have no application to surface street railways; that such a railway does not come within the same class with elevated or underground railways, and since the statute was directed to the granting of franchises for the construction of elevated and underground railways, the additional words "other street railways" must be confined to railroads of the same kind on the principle of *ejusdem generis.*

Recognizing fully the usefulness of the rule of *ejusdem generis* in the construction of statutes, we understand that it must not be carried to such an extent as to nullify the plain intent of the General Assembly.   The language of the act is, "Before granting any franchise for constructing and operating any elevated, underground or other street railroad, on, over or under any street or alley," etc.   In the very nature of things street railways, are either surface, elevated or underground, so that when our lawmakers used the words "elevated" and "underground," they exhausted the species except only "surface" street railways, and unless we are prepared to wholly reject the words "other street railways" and eliminate them from the statute, these words apply to and include surface street railways.   But we go further; we must convict the Legislature of using another meaningless expression, when it says, "any elevated, underground or *other street railway, on,* over or under any street or alley."

The words, "other street railway," are not repugnant to any other word in the sentence, but obviously apply to a surface road.   "Over" means over, and can only apply to elevated roads; "under" means beneath and can refer only to underground roads, and "on" means on, and can only refer to a surface road *on* the street.

But giving the rule of *ejusdem generis* full sway, surface street railways are *ejusdem generis* with elevated and underground street railways.

The *genus* is street railway, the kinds or species of street railways are elevated, underground and surface and the act before us clearly and plainly includes them all. [Booth on Street Rys., sec. 1; State v. Harvey, 141 Mo. 346; Sutherland on Stat. Cons., sec. 278.]

We are clearly of opinion that the statute governs the construction of surface street railways as well as elevated and underground railways.

If we are right, then, in holding that the statute applies to surface street railroads and that the act requires such a company "before taking or damaging any property in the construction of its railroad" under its franchise, to have the damages its construction will occasion, ascertained, determined and paid, what is the effect of this provision? Does it create a new right to damages, one which our laws did not recognize or enforce prior to the enactment of the statute, or was it intended merely to give an abutting owner whose property is damaged but not taken, the remedy he would have had at common law if the work had been unauthorized, provided he suffered a peculiar damage?

When this act was passed, the Constitution of 1875 had been adopted and these words "taken or damaged for public use" were incorporated in section 21 of article 2 of that instrument, and had been construed by this court. Long prior to the adoption of that Constitution this court had ruled in Porter v. Railroad, 33 Mo. 128, that the laying of a railroad track, pursuant to authority granted by the city on the established grade of a street did not subject the street to a servitude different from that which was contemplated in the original dedication, and the damage to an abutting owner resulting from such use

of the street was *damnum absque injuria*. [State v. M., K. & T. Ry. Co., 64 Mo. 158; Cross v. Ry. Co., 77 Mo. 321.]

Since the adoption of the Constitution, the same rule has been adhered to. [Gaus Mfg. Co. v. Ry. Co. 113 Mo. 308.]

But the city can not confer upon a railroad an exclusive right to use the street or highway. [Lockwood v. Ry. Co., 122 Mo. 86; Sherlock v. Ry. Co., 142 Mo. 172; Schulenberg v. Ry. Co., 129 Mo. 455.]

In Rude v. City of St. Louis, 93 Mo. 408, this court construed the words "taken or damaged" in connection with a claim for damages by an abutting owner against the city, and it was held that the abutting owner must show, to entitle him to recover damages for an obstruction of the street, that the damages are peculiar to him, different in kind and not merely in degree from those suffered by other members of the community.

In Hickman v. Kansas City, 120 Mo. 116, it was ruled that section 21, article 2, of the Constitution of 1875, which provides "that private property shall not be taken or damaged for public use without just compensation," had been amended by adding the words "or damaged," simply to provide for compensation when property is damaged, as well as when taken for public use, and that since it was added it has been the settled law that when property is damaged by establishing the grade of a street or by raising or lowering the grade thereof it is damaged for public use, but those words did not give an abutting owner a right to recover unless he could show some direct physical disturbance of a right, either public or private, which he enjoys in connection with his property, and which gives an additional value to it, and by reason of such disturbance he has sustained a special damage over and above that sustained by the public generally.

With this long settled construction upon these words of our Constitution we find the General Assembly using them in

this revised act in 1889 long before the construction of this street railway on Grand avenue. And counsel for plaintiff asks us to construe them as creating a new right, one that he concedes did not, under our decisions, exist prior to the Act of 1887.

It is evident, we think, that the General Assembly had a purpose in view when they substituted the words "before taking or damaging any property" for the words "before beginning the construction of a railroad," in the Act of 1887. They are widely different in significance and we can not construe them as inadvertently used to express the same idea. We think that purpose was to use words which had received judicial interpretation and when they did so they are presumed to have used them in that sense. [Sutherland on Stat. Cons., sec. 255.]

What, then, is the result? The ordinance itself was within the charter power of the municipal assembly, and the railway company by the act as amended, was only required to have a commission to ascertain the damages when in the meaning of the statute and our Constitution the property of some abutting owner would be taken or damaged, and as it appears that plaintiff has suffered no damage by the laying of the track on said street different from that sustained by all other abutting proprietors on said street, it must be held that no new or different right was given him by the statute. [Van De Vere v. Kansas City, 107 Mo. 83; Ransom v. Ry. Co., 104 Mo. 375; Placke v. Ry. Co., 140 Mo. 634.] This being so, the injunction was properly denied.

We have examined with great interest the very able brief and argument of the learned counsel for plaintiff and if we could agree with him that the Act of 1887 was not changed by the amendment to it by the revision of 1889, we might take a different view of the law, but as already said we think the changes effected by that revision wrought a radical change in

State ex rel. v. Ryland.

the meaning of the statute and we consider the present language of the statute to be too well and too long settled to justify us in construing it differently.

The conclusion reached on that point renders it unnecessary to discuss many other propositions which the ingenuity and research of counsel have suggested, and so ably presented.

Accordingly, the judgment must be and is affirmed.

*Sherwood, P. J.,* and *Burgess, J.,* concur.