FOUDRY, Appellant, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY et al., Respondents.

**St. Louis Court of Appeals, March 17, 1908.**

1. **HIGHWAYS: Obstruction of Streets by Railroad Tracks: Municipal Authority.** Where a railway company, acting under a license from proper authority, lays its track along the established grade of a public street and operates trains thereon, it is not liable for damages to the owner of abutting property. But this rule is subject to the qualification that the maintenance and use of such track is unlawful if it prevents the use of the street for traffic or shuts off access to private property.

2. ――――: ――――: **Injunction: Damages.** Where the building and use of a railway track along a street prevents the use of the street for traffic or prevents access to private property, the owner of such property may generally maintain injunction to prevent the operation of such track or in some cases injunction may be denied and the party left to his action for damages.

3. ――――: ――――: **Facts Insufficient to Justify Injunction.** In an action by the owner of a lot in a city to prevent the operation of a switch-track built by a railroad company along the street in the rear of the plaintiff's property, where it was

shown the switch was nine feet from the plaintiff's line, that a strip of street eighteen feet wide was between the switch track and the main track, and that a crossing was built across the switch at the rear of the plaintiff's property, the finding by the trial court that access to the plaintiff's property was not prevented nor use of the street obstructed, was sustained by the evidence.

4. ————: ————: What Is Obstruction. In determining whether the construction and use of a railway track along a street obstructs the travel or prevents access to adjacent property so as to justify an injunction, the court must take into consideration the amount of travel and traffic of the street, the population and volume of business in the city, the proximity and convenience of other streets and other circumstances. While the books do not lay down a definite rule as to what constitutes obstruction, in general it may be said that tracks must not so far engross a street that the public will forego its use rather than encounter the danger and difficulty of using it.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston*, Judge.

AFFIRMED.

*H. H. Bloss* for appellant.

One track of a steam railway in an alley where no sidewalks would be required, the alley being sixteen feet wide, was held to be a monopoly of the alley. Sherlock v. Railway, 142 Mo. 172. Again this court held that where an ordinance required the operations of a horse railway every fifteen minutes, in Olive alley, which was twenty feet wide, it was a monopoly of the alley. Watson v. Railway, 69 Mo. App. 548. Two tracks in a forty-foot street from curb to curb was likewise held unlawful. Dry Goods Co. v. Railway, 41 Mo. App. 72. Further authorities showing that the facts here detailed proved an unauthorized use of the street and that the city council has no authority to grant such use of a public street in Missouri, are as follows: Lockwood v. Railway, 122 Mo. 86; Lumber Co. v. Railway, 129 Mo. 455; Duback v. Railway, 89 Mo. 483; De Geo-

froy v. Railway, 179 Mo. 708; Corby v. Railway, 150 Mo. 465.

*Martin L. Clardy* and *Edw. J. White* for respondent, St. L., I. M. & S. Ry. Co.

(1)   The undisputed evidence showed that Commercial street in Aurora had only been used as an alley, east of the plaintiff's lot, because a main thoroughfare, Olive street, extended in front of the lots, in the block in which plaintiff's lot is located, and the block is only a half block, or one hundred feet deep.   Elliott on Roads and Streets, pp. 91, 109; Long v. Battle Creek, 39 Mich. 323; Trustees v. Mayor, 33 N. J. L. 13, 97 Am. Dec. 696; Pettibone v. Hamilton, 40 Wis. 402; Valentine v. Boston, 22 Pick. 75.   (2)   The undisputed evidence showed that plaintiff had no equities to entitle her to injunctive relief, as she had no rear access to her lot at all, before the railway company bought and dedicated the street to the public, subject to its rights, granted by the ordinances, regularly passed by the city council of Aurora, but the plat of ground now used by her as a street, was then under a barbed wire fence and belonged to the Linzee estate.   Nagle v. Railway, 167 Mo. 94; Thompson v. Macon City, 106 Mo. App. 84; Ruckert v. Railway, 163 Mo. 260; Porter v. Railroad, 33 Mo. 128.

*McNatt & McNatt* for respondent, Majestic Milling Co.

Stripped of all verbiage, the law of this State seems to be settled that a city may grant the reasonable use of its streets to a railroad company to be used in conjunction with the public, but has no right to grant the exclusive use to either steam or electric railroads, nor have such roads the right to use the streets so as to practically exclude the public from the use of them, an injunction will likely restrain them from so doing, and further that if any one property owner is injured by reason of the construction of any railroad along the

streets in a peculiar manner, such as is not common at all of the property-owners along such street, that such abutting property-owner, so peculiarly injured, may have a right of action for his damages.   Debach v. Railroad, 89 Mo. 488; DeJeoffrey v. Railroad, 179 Mo. 708.

STATEMENT.—This plaintiff asks an injunction against the defendants, two railroad companies and a milling company, to prevent them from maintaining a switch in a public street in the city of Aurora.   The switch was put in partly to connect the tracks of the two railway companies and partly to serve the milling company, which was made defendant on an allegation that it was co-operating in the obstruction of the street. Plaintiff sues not only for herself, but in behalf of all other persons whose property will be affected like hers by the switch.   She owns a lot twenty-five feet wide and a hundred feet deep, which abuts at the rear on Commercial street where the switch track was laid. The front of her lot abuts on Olive street, south of Commercial street.   Her residence is near the front, and at the back end and nine feet from the proposed switch, is a barn.   Plaintiff's property is lot 10, block 1, in Lindsee's addition to the city.   The west boundary of this block is Harrison avenue and according to the plat which has been filed with the abstract, the east boundary is Adams street; but this street is not referred to by the witnesses, and the only cross streets mentioned in the testimony as east of plaintiff's lot and intersecting Olive and Commercial streets, are Washington and Thomas avenues.   Commercial street never has been used for traffic and travel, but always as an alley.   Olive street to the south is one of the main business thoroughfares of the city, and on account of their shallowness no buildings front on the rear of the lots between it and Commercial street.   When plaintiff bought her property there was neither street nor alley in the rear, but

that portion of what is now Commercial street was private property belonging to the Lindsee estate. At that time Commercial street, neither as shown on the plat of the city, nor as opened, extended as far west as plaintiff's property. Its most western part as platted, lay to the east of plaintiff's lot and even this part had not been opened, but was fenced with barbed wires with gates in them. In 1903 the city of Aurora granted the St. Louis, Iron Mountain and Southern Railway Company the right to lay its main track, and one side track, along Commercial street. As will be gathered from the facts already stated, the condition of said street was then as follows: the part of it which had been opened was used as an alley rather than as a street. The terminus of the part opened was considerably to the east of plaintiff's lot and the part which never had been opened, but was fenced, ended to the eastward of plaintiff's lot. The ground in the rear of her lot was private property. The street was thrown open behind her lot and westward to the city limits, by said railroad company buying the ground from the Lindsee estate and dedicating it as a street, the company being granted, as said, the right to lay its main track and one side track in the street. Afterward, in 1905, the Majestic Milling Company purchased a strip of ground on the southwest corner of Harrison avenue and Commercial street as a site for a large flouring mill. On September 4, 1905, the Iron Mountain Company was granted, by ordinance, the right to lay a spur track south of its main track and on the south side of Commercial street to the site of the proposed mill. At the same time the St. Louis & San Francisco Railway Company commenced to extend a switch track from the west to connect with the Iron Mountain Company's spur track, thereby uniting the main lines of the two railway companies. These companies had been ordered by the Railroad & Warehouse Commission of the State to construct and maintain a connection for their tracks

at Aurora, and the track in controversy was intended
as a compliance with said order, as well as to serve the
milling company. This fact is pleaded in defense. The
facts on which an injunction against the construction of
the switch is prayed are that the Iron Mountain Com-
pany had already occupied Commercial street, which
is only fifty feet wide, with two tracks, and three
tracks would take up fifty-one feet of ground, or more
than the width of the street, and would permanently
monopolize the entire street to the great and irreparable
injury of plaintiff's property. The substance of the
cause of action is that the street would be appropriated
for the use of the railway and milling companies to such
an extent as to prevent travel and transportation over
it and deprive plaintiff of access to the rear of her lot,
and it is insisted any ordinance of the city which pur-
ported to license such a use of the street, is invalid. Be-
sides the defense we have noticed, the several answers
filed by the defendants justify the laying of the track un-
der an ordinance validly enacted by the city, granting
the Iron Mountain Company permission to lay it. The
answers deny the track damages the property of plaintiff
or prevents access to it from the rear, or obstructs pub-
lic travel on the street; allege the street was not a trav-
eled one and had not been since its dedication; that it
never had been prepared for travel until the construction
of the Iron Mountain Company's tracks, at which time
said company made the use of the street for travel, prac-
ticable by grading and macadamizing it. It is alleged
there is a strip nine feet or more wide on the south side
of the proposed track to the rear of plaintiff's lot, which
affords ample room to drive a team and vehicle to her
barn; that the Iron Mountain Company has prepared
a crossing over the tracks opposite her barn and on a
level with the rails; that said crossing is composed of
oak planks and makes a driveway even with the top of
the track. This plat will show the situation:

NORTH

ADAMS AVE.

OLIVE

COMMERCIAL STREET.

MAIN LINE

MAIN LINE

PASSING SIDING

WHITE RIVER

MAJESTIC

ST.L.M.&S. RY.
White River Division
Plan Showing Location
Majestic Mill Spur
Office Drawing No.
Scale:- Mch. 1906

Bert Gardner
Gardner Pourray

Alice
Pourray

Bert Gardner

HOUSE

HOUSE

HOUSE

BARN

BARN

BARN

HARRISON AVE

STREET

MILL SPUR

RAILWAY

MAJESTIC MILLING CO.

In addition to the plat various photographs are contained in the record from which a clear understanding of the location of the switch, with reference to plaintiff's property, can be obtained. The court found the facts substantially as alleged in the answers of the defendants and found, too, the property of plaintiff, and all other property on Commercial street, had been enhanced in value by the construction of the railroad tracks in Commercial street; that the two railroad companies were in the enjoyment of their lawful rights in the maintenance and operation of their tracks on the street, and that the milling company had built its mill and elevator on the switch, thereby acquiring a vested and permanent right therein. It was adjudged the bill of plaintiff be dismissed and defendants go hence without day and recover their costs. Plaintiff appealed.

Though some testimony was given by plaintiff regarding the noise and obstruction caused by operating trains on the mill switch, no nuisance arising in consequence of such annoyance is declared on as ground for relief in the petition, which proceeds on the theory that a city highway has been appropriated to the use of the railway and milling companies to the exclusion of the general public from the street and of plaintiff from access to the rear of her lot. It is alleged these two violations of legal right will result from laying three tracks in the street, but nothing is said about the effect of trains on the use of the street by the public or of her lot by plaintiff; and, in truth, what testimony there is in the record touching these points, tends to prove cars will not be permitted to stand on the new switch, because it must be kept open for the transfer of cars from the main line of one railway company to the main line of the other.

GOODE, J. (after stating the facts).—The rules of law applicable to a case of this kind have been ex-

pounded in a series of decisions extending from Lackland v. Railroad, 31 Mo. 180, to De Geofroy v. Railroad, 179 Mo. 698, 79 S. W. 386. According to those decisions a railway company, acting under a license from the proper authority, may lay its track along the established grade of a public street and operate trains thereon, without becoming liable in damages to the owners of abutting property, unless the damage is occasioned by lack of reasonable care and skill in doing the work. The theory of the courts is that such a use of the street by a railway company, instead of diverting the thoroughfare from the purpose to which it was dedicated, realizes said purpose; that is to say, enhances the use of the street by the public as a place for travel and transportation. From this theory has been deduced the conclusion that abutting property owners acquire and improve their property with knowledge that sometime a railroad may be operated along the street, perchance diminishing the value and enjoyment of their property, and hence are not entitled to damages; as they would be if the street was devoted to a new servitude foreign to the purpose for which it was dedicated. Whatever may be thought of the justice of this doctrine, it is established law in Missouri, but is subject to certain qualifications; and of these two are invoked by plaintiff against the right of defendants to maintain the track in controversy. A railway in a street is unlawful if it prevents the use of the street for traffic and travel or shuts off access to private property. [Sherlock v. Railroad, 142 Mo. 172, 182, 43 S. W. 629.] In deciding cases like this one, the point of difficulty arises not on the law, but on the facts, and is met in striving to ascertain whether the track so obstructs the street as to hinder the public from using it (Dubach v. Railroad, 89 Mo. 482, 488) or obstructs the approach along the street to private property more than is allowable; such access being, in itself, a property right. [Gauss & Sons

Mfg. Co. v. Railroad, 113 Mo. 308, 315, 20 S. W. 658.]
In general when either of these wrongs results from
the laying and operation of a proposed track, the rail-
way company may be enjoined; though perhaps a case
of interference with the right of access to an abutting
lot might occur in which, on a consideration of all the
circumstances, a court of equity would refuse the in-
junction and leave the aggrieved party to an action for
damages. As the proper solution of this controversy
depends on a correct conclusion regarding the effect of
the construction of the new track on plaintiff's ap-
proach to her lot from the rear and on the public use
of the street, we have attended chiefly to the evidence,
waiving the question of the sufficiency of the petition,
which is challenged by defendants. Counsel for de-
fendants attach much importance to the circumstance
that the Iron Mountain Company purchased the ground
in the rear of plaintiff's lot and made a street of it.
But we think this fact affords defendants no greater
right in law or equity to appropriate the street after
its dedication, or to impair its usefulness to plaintiff,
than they would have if some one else had dedicated
it. Hence we reject the reasoning by which counsel for
defendants attempt to raise an equity for their clients
on the fact that one of them gave the street to the city.
Though there is some conflict in the testimony, in the
main, it supports the finding of the court below that
the plaintiff is not deprived by the track in question
of an approach to her lot, nor the public ousted from
such a use of the street as, considering the character
of the improvements along it, would be made if there
were no tracks on it. It appears that after the Iron
Mountain Company laid its tracks, it graded and maca-
damized Commercial street and for the first time made
it fit for horses and vehicles. The trial court found the
improvements put in by said company made travel on

130 App.—8

the street convenient and might have found they made
it possible. As to the facility of approach to plaintiff's
lot, it appears that before the Iron Mountain Company
opened the street, she could only get to her barn by driv-
ing across private lots contiguous to hers. She had no
rear access then, but now can drive into Commercial
street from Harrison on the west, and thence along the
south side of Commercial on a strip nine feet wide,
lying between the south rail of the new switch and her
barn. Not only has the street been graded and maca-
damized, but at this point a crossing composed of oak
boards twelve feet long and four inches thick, has been
laid by the Iron Mountain Company, over which plain-
tiff can drive. Beside the strip south of the switch, she
can use the open space eighteen feet wide opposite her
barn and widening from that point to Harrison street
between the switch and the main track of the Iron
Mountain Company. It is true a switch stand has been
placed in this space west of the line of plaintiff's lot,
but the testimony shows there is ample room to drive
around this obstacle. We are inclined to defer largely
to the findings of the lower court, as a perusal of the
record has yielded an impression they are correct.
Therefore we accept the view that plaintiff's access to
the rear of her lot is not so obstructed by the switch
as to entitle her to an injunction against its construc-
tion.

The other question of fact relates to how much
travel is obstructed by the railway tracks, and in ex-
amining the record with reference to this matter, we
have been left in uncertainty as to which of the three
tracks lie in Commercial street. The petition says
there are three tracks in the street opposite plaintiff's
property; but the testimony is unequivocal that one
of these, called the "passing track," the north one of
the three, is built entirely on private property and not
in the street; and the civil engineer of the Iron Moun-

tain Company, who is familiar with the situation of the tracks, swore the main track was also on private property at a point opposite plaintiff's lot. If his testimony is true, and we have found none directly contradicting it, the new switch is the only track built in Commercial street opposite plaintiff's lot. Whatever the truth may be about this matter, the weight of evidence conduces to prove the laying of the switch will not exclude teams and vehicles. We conclude from the testimony and the photographs of different parts of the street, that practically the only use made of it heretofore was for hauling, not for travel in vehicles. Except that no buildings face it, it presents the usual appearance of a street on which railway tracks are laid, such as may be seen around freight depots in many towns. Wagons can be driven over it to and from the depots and to the rear of lots, but it has not been and will not be used for general driving. When several trains are passing at the same time, a team might be delayed; but this would occur too rarely to constitute a monopoly of the street by defendants and justify an injunction. Stress is laid on the fact that there is a ditch or excavation in the street to the eastward of plaintiff's property, and it is insisted this ditch and the tracks will practically prevent travel. Both the witnesses and the photographs show the ditch is shallow. It can be filled easily and whatever obstruction it offers to vehicles relieved.

No precedent we have found attempts to define exactly what degree of hindrance to travel and traffic on a street must be caused by railway tracks, to amount to an exclusion of the public and justify an injunction. The courts declare a street cannot be monopolized by railway companies, or its primary use as a thoroughfare or passageway destroyed. But what measure of obstruction will bring a particular case within the force of the rule thus expressed, is nowhere stated. The

most that can be done in a given case, is to consider the impediment offered to the use of the street by the track in controversy, with reference to impediments held to be permissible or unlawful in precedents wherein injunctions were granted or refused. As said in a previous decision, comparisons must be instituted. [Morie v. Transit Co., 116 Mo. App. 12, 28, 91 S. W. 962.] The customary travel and traffic over the street in question, the population and volume of business in the city, and the proximity and convenience of other streets, are facts to be considered. What would be an unreasonable obstruction by railway tracks in a great metropolis, because of the consequent congestion of traffic, might be trivial in a small town; or a track in a busy street might be an intolerable nuisance when it would occasion but slight inconvenience in another quarter of the town. The environment is to be remembered. Annoyances incident to railway tracks and trains are expected, and hence are more patiently tolerated, on streets around freight depots and in districts of a city where heavy traffic is carried on, than in residence districts. We do not understand that in order for tracks in a public street to amount to a monopoly of the street by a railway company and an exclusion of the public from it, they must render passage by teams and vehicles impossible; and neither do we understand that a considerable hindrance to travel and traffic, if these can go on, though with some inconvenience, will be treated as unlawful in every instance. But the tracks must not so far engross a street that the public will forego the use of it rather than encounter the danger and difficulty of using it. Perhaps the matter cannot be expressed better than by saying, as was said, in effect, in Sherlock v. Railroad; Knapp, Stout Co. v. Railroad, supra, and Lockwood v. Railroad, 122 Mo. 86, 26 S. W. 698, that while the populace must submit to reasonable inconvenience from such obstructions,

they will not be permitted to go to the extent of destroying or unreasonably interfering with the street as a place of locomotion. On the whole, they ought to enhance, rather than lessen its usefulness as such. We have compared the facts before us with those in the cases counsel have cited, and think the court below observed the spirit and principle of those decisions in finding plaintiff was not deprived by the track in question of access to her lot, or the easement of the public in Commercial street destroyed or unreasonably impaired. The decisions we have examined, besides those already cited, are the following, to which the reader is referred for light on the general question: Porter v. Railroad, 33 Mo. 128; Rude v. St. Louis, 93 Mo. 408, 6 S. W. 257; Schopp v. St. Louis, 117 Mo. 131, 22 S. W. 898; Spencer v. Railroad, 120 Mo. 154, 23 S. W. 126; Christian v. St. Louis, 127 Mo. 189, 29 S. W. 996; Schulenberg v. Railroad, 129 Mo. 455, 31 S. W. 796; Corby v. Id., 150 Mo. 457, 52 S. W. 282; Ruckert v. Id., 163 Mo. 260, 63 S. W. 814; Nagel v. Id., 167 Mo. 89, 66 S. W. 1090, and Heer D. G. Co. v. Citizens Railway Co., 41 Mo. App. 63.

We find in Tate v. Railroad, 64 Mo. 149, and Sherlock v. Railroad, supra, remarks that streets cannot be used for side tracks and the like structures. We have been puzzled to know what the Supreme Court means by these observations, for in other cases the right to construct side tracks and switches under a permission from the municipality, has been sustained. [Brown v. Railroad, supra.] We have found no case in which the point in decision was that a railroad company had no right to lay a switch track in the street merely because any track of that sort would be an unlawful obstruction; no decision in which such an obstruction was held to be a nuisance *per se;* but we do find decisions treating switches in a street as lawful when they do not too greatly hinder its use by the public. This

point had not been made or insisted on, and really there is no necessity for alluding to it, but we have been embarrassed by those dicta.

Our conclusion is that the essential question in all such cases, be the track a main line or a switch, is whether or not it will unreasonably obstruct the street.

The findings of fact by the court below were unnecessarily broad, and might hereafter stand in the way of an action by plaintiff for damages founded on negligence or other dereliction of the company. It was enough to hold she had shown no case for injunctive relief against the construction and operation of the proposed switch, and to dismiss her bill and give final judgment for defendants. To this extent the judgment is affirmed. All concur.